Robert Thomas **BARNES**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 43752.

Court of Criminal Appeals of Texas.

June 2, 1971.

H. Bryan Poff, Jr., Amarillo, for appellant.

Tom Curtis, Dist. Atty., and Hugh Russell, Asst. Dist. Atty., Amarillo, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This appeal is from an order revoking probation.

On September 30, 1969, appellant entered a plea of guilty, before the court, to the offense of breaking and entering a motor vehicle. Punishment was assessed at two years; imposition of sentence was suspended and appellant was placed on probation. One of the terms and conditions of probation was that he "commit no offense against the laws of this or any other state, or of the United States."

On March 27, 1970, the state filed a motion to revoke probation alleging that the appellant had committed a felony theft on February 28, 1970. On April 3, 1970, an amended motion to revoke probation was filed alleging:

"That the defendant failed to comply with the above listed conditions of his probation, to-wit: On or about the 28th day of February, 1970, a date subsequent to the above mentioned conviction, in the County of Potter and State of Texas, the said Robert Thomas Barnes did then and there unlawfully and fraudulently take one (1) 1965 Honda Motorcycle of the value of over $50.00 from the possession of Johnny Baird, the same then and there being the corporeal personal property of and belonging to the said Johnny Baird, without the consent of the said Johnny Baird, and with the intent to

deprive the said Johnny Baird of the value thereof, and to appropriate the said property to the use and benefit of him, the said defendant, Against the Peace and Dignity of the State.

"Further, on or about the 28th day of February, 1970, a date subsequent to the above mentioned conviction, in the County of Potter and State of Texas, the said Robert Thomas Barnes did then and there unlawfully and wilfully drive and operate and cause to be driven and operated upon a public road and highway, there situate, a motor vehicle over the value of $200.00, to-wit: a 1965 Honda motorcycle, owned by Johnny Baird, in the absence of and without the consent of the said Johnny Baird, Against the Peace and Dignity of the State.

"Wherefore, Premises considered the State moves the Honorable Court to issue a capias for the arrest of the defendant, call the defendant before the Court, revoke his probation and order the said defendant committed to the Texas State Penitentiary to serve his sentence."

On April 6, 1970, a hearing was held on the amended motion; at the conclusion thereof, the court announced:

"The court is of the opinion and so finds that the testimony is sufficient to show that the defendant has violated his probation and that he is guilty as charged in the first paragraph—subparagraph of Paragraph five, except that the value is not shown to exceed $50.00, and further that he's guilty as charged in the second subparagraph of Paragraph five, except that the testimony does not show the vehicle to be over the value of $50.00."

The formal order revoking probation "found that the defendant failed to comply with the conditions of his probation, as set forth in said motion" to revoke.

First, appellant challenges the sufficiency of the evidence.

Jack H. Inman, an Amarillo Police Officer, testified that on March 1, 1970, he received a report of a stolen motorcycle; that he made an investigation and saw the motorcycle at a place owned by James Latham, who had "called and advised that he found a motorcycle hidden under some wood behind his storage shed at 913 North Houston." The officer stated that "It was a '65 Honda 160 motorcycle" and "It had '70 Texas License X18870." He released it to Johnny Baird.

Loren Jones, Potter County Tax Assesor-Collector, testified that a 1970 Texas License Number X18870 had been issued to a 1965 Honda motorcycle on February 24, 1970, with the registration receipt reflecting the owner as Johnny D. Baird.

John David Pendergrass, aged 16, testified that on the night of February 28, 1970, he saw the appellant at a "Toot'n Totum" drive in grocery store and asked him if he knew who owned the 160 Honda motorcycle "parked beside the trash bin." Then he was asked:

"Q. All right. And what did Robert say to you in return?

"A. He said 'Don't tempt me,' or something like that.

\* \* \* \* \* \*

"Q. All right. How did you get the motorcycle started?

"A. Robert hot-wired it.

"Q. By 'hot-wired,' what do you mean?

"A. He took the switch apart, and I don't know what he done to it.

"Q. All right. Did the motorcycle start right up?

"A. He had to push it around and tinker with it some more.

"Q. All right. Did you know whose motorcycle that was at the time?

"A. No, sir.

"Q. Did Robert know whose motorcycle that was?

"A. Not that I know of.

"Q. All right. Did anyone give either of you permission to take that motorcycle?

"MR. POFF: That calls for a conclusion on his part as to whether or not anyone gave Robert Barnes permission to take the motorcycle.

"THE COURT: Overruled.

"Q. (By Mr. Russell) Did anyone give either you or Robert Barnes permission to take the motorcycle at that time?

"A. No, sir.

\*     \*     \*     \*     \*     \*

"A. We went down a street called Dale, beside the school, then across some other streets.

"Q. All right. When you went by the school, what did you do there?

"A. We pushed it over to the school and Robert hot-wired it, then we got it started and just took off from there.

"Q. Okay. Did you see anybody at that time?

"A. No, sir.

\*     \*     \*     \*     \*     \*

"Q. All right. Did you ever tell them that you and Robert had stolen a motorcycle?

"A. Yes, sir.

\*     \*     \*     \*     \*     \*

"Q. And what did you tell them?

"A. Well, I didn't tell Gary, I told Ricky.

"Q. What did you say?

"A. I said—I asked him if he knew who owned it.

"Q. Owned what?

"A. The motorcycle.

"Q. And then what did you say?

"A. I don't remember what all he said, but it was about the motorcycle."

And on cross-examination:

"Q. When you talked to Ricky, why did you tell Ricky you stole the motorcycle?

"A. Because I was wanting to find out who belonged it—who owned it."

On re-direct:

"Q. Prior to the time you hot-wired the motorcycle, this Honda motorcycle, got on it and rode off, did anyone named Johnny Baird come out and tell you it was all right to take that motorcycle?

"A. No, sir."

Ricky Blevins, age 13, testified that he had seen Pendergrass and the appellant riding a Honda motorcycle in an alley behind his home; that Pendergrass told him "they had stolen a motorcycle," and showed him where they hid it.

Gary Floyd, age 14, testified that he recovered an ignition bolt from the top of a school building where Pendergrass had told him it had been thrown. He also testified that on one occasion he had seen what looked like the appellant and Pendergrass riding a motorcycle in an alley behind Ricky Blevins' house and that he was sure it was them after Pendergrass confirmed it.

Johnny Baird, the alleged owner of the motorcycle, did not testify.

Appellant also contends there was no showing that the taking of the motorcycle was without consent.

Even though in a theft case, this evidence would be insufficient with no showing that the owner was not available, we conclude that the circumstances developed at this hearing were sufficient to show lack of consent to take the motorcycle. See Casarez v. State, Tex.Cr.App., 468 S.W.2d 412; Dorsey v. State, 172 Tex.Cr.R. 311,

356 S.W.2d 943; Smith v. State, 123 Tex.Cr. R. 47, 57 S.W.2d 132; Lynch v. State, 70 Tex.Cr.R. 449, 156 S.W. 1182.

As to the value of the motorcycle; true, the state, in the motion to revoke probation alleged that the appellant committed felony offenses. The proof shows only an offense against the laws of this state, i. e. the theft of a motorcycle and the value is not shown to exceed fifty dollars. It is evident that there was "poor pleading" or "poor proving", either of which is certainly not to be commended. Nevertheless, we conclude that the said motorcycle had *some* value. In Morris v. State, Tex.Cr.App., 368 S.W.2d 615, at 617, this court stated:

"While we are not ready to say that the court may take judicial knowledge of the value of an automobile, we do say that proof that the automobile taken in June, 1962, was a 1957 Pontiac convertible in condition to drive from Dallas to Vernon and return, required but little supporting evidence to sustain the allegation that it was of the value of over $50."

See also Branch v. State, Tex.Cr.App., 465 S.W.2d 160, and Foote v. State, Tex. Cr.App., 463 S.W.2d 445.

In Branch v. State, supra, this court stated:

"The only issue on appeal is whether the trial court abused its discretion in revoking the probation. The hearing on the revocation is not a criminal trial. Hood v. State, Tex.Cr.App., 458 S.W.2d 662; Tate v. State, Tex.Cr.App., 365 S.W.2d 789. * * *

\* \* \* \* \* \*

"Contrary to contention by the appellant, the State was not bound to prove that the value or replacement value of the windshield was over $50.00. The proof of the wilful injury or destruction of the property (Art. 1350 V.A.P.C.) was sufficient to show a violation of the law."

In Hulsey v. State, Tex.Cr.App., 447 S.W.2d 165, this court stated:

"Revocation proceedings are not trials in the constitutional sense with reference to criminal cases. Wilson v. State, 156 Tex.Cr.R. 228, 240 S.W.2d 774; Ex parte Gomez, Tex.Cr.App., 241 S.W.2d 153; Jones v. State, 159 Tex.Cr.R. 24, 261 S.W.2d 317, cert. den. 346 U.S. 836, 74 S.Ct. 53, 98 L.Ed. 358; Cooke v. State, 164 Tex.Cr.R. 320, 299 S.W.2d 143; Gorman v. State, 166 Tex.Cr.R. 633, 317 S.W.2d 744; Leija v. State, [167 Tex. Cr.R. 300,] 320 S.W.2d 3; Stratmon v. State, 169 Tex.Cr.R. 188, 333 S.W.2d 135."

See also Hilton v. State, Tex.Cr.App., 443 S.W.2d 844; Manning v. State, 412 S.W.2d 656; Ex parte Bruinsma, 164 Tex.Cr.R. 358, 298 S.W.2d 838, cert. den., Bruinsma v. Ellis, 354 U.S. 927, 77 S.Ct. 1386, 1 L.Ed.2d 1439.

■ We find the evidence sufficient to support the revocation of probation. Appellant's first ground of error is overruled.

Appellant further contends that the state failed to corroborate the testimony of accomplice witness Pendergrass.

In Gonzalez v. State, Tex.Cr.App., 456 S.W.2d 53, at page 57, this court stated:

"Bearing in mind that a proceeding to revoke probation is not a criminal trial; the statute requiring that the testimony of an accomplice be corroborated does not apply and the uncorroborated testimony of an accomplice may be sufficient to revoke probation; the court may accept a part of the testimony of a witness and reject other portions of his testimony; and that proof by circumstantial evidence that the probationer was a principal or an accomplice would be sufficient to sustain the court's finding that the probationer committed the acts. * * *"

■ It is well settled that revocation of probation is not a "conviction" within the meaning of Article 38.14 Vernon's Ann. C.C.P. See Hulsey v. State, supra; McDonald v. State, Tex.Cr.App., 393 S.W.2d

914; Soliz v. State, 171 Tex.Cr.R. 376, 350 S.W.2d 566; Dunn v. State, 159 Tex.Cr. App. 520, 265 S.W.2d 589.

Appellant's second ground of error is overruled.

■ We find no merit in appellant's contention that his right to a fair hearing was violated or that it was error for the trial court to allow the state to reopen to show that he had been placed on probation in this cause.

We hold that the trial court did not abuse its discretion in revoking appellant's probation.

The judgment is affirmed.

ONION, Presiding Judge (dissenting).

I feel compelled to dissent as vigorously as I know how to the continuing efforts of the majority to lower the standards applicable to revocation of probation hearings when the trend should be in the opposite direction in this day and age of continuing improvement in criminal procedure and fairness in all criminal proceedings. See this writer's dissent in Casarez v. State, Tex.Cr.App., 468 S.W.2d 414.

When a probationer is accused of having violated his probationary conditions by committing a penal offense, he is not entitled to require that prior to revocation that there be a trial and conviction in a court of competent jurisdiction for the offense which is the basis of the revocation. Dunn v. State, 159 Tex.Cr.App. 520, 265 S.W.2d 589; Ex parte Gomez, Tex.Cr.App., 241 S. W.2d 153; Ex parte Bruinsma, 164 Tex.Cr. R. 358, 298 S.W.2d 838, cert. den., Bruinsma v. Ellis, 354 U.S. 927, 77 S.Ct. 1386, 1 L. Ed.2d 1439; Gorman v. State, 166 Tex.Cr. R. 633, 317 S.W.2d 744; Hulsey v. State, Tex.Cr.App., 447 S.W.2d 165. This was a requirement of the former Suspended Sentence Law (Articles 776–781, V.A.C.C.P., 1925), but not of the Adult Probation Law (Article 42.12, V.A.C.C.P.).

And such probationer is not entitled to a jury trial to determine if his probation should be revoked. Article 42.12, Sec. 8, V.A.C.C.P.; Hulsey v. State, supra; Dunn v. State, supra; Ex parte Gomez, supra. Further, probation may be revoked for violation of any penal offense; it is not restricted to a violation of a felony or a misdemeanor involving moral turpitude. Jackson v. State, 165 Tex.Cr.R. 380, 307 S.W. 2d 809.

Having granted probation, however, the court is not authorized to revoke without having found that the probationer has violated conditions of his probation. Wozencraft v. State, Tex.Cr.App., 388 S.W.2d 426. Probation cannot be arbitrarily withdrawn by the court. And the burden of proof in revocation proceedings to show a violation is upon the State. Zane v. State, Tex.Cr. App., 420 S.W.2d 953; Campbell v. State, Tex.Cr.App., 456 S.W.2d 918; Perry v. State, Tex.Cr.App., 459 S.W.2d 865; Hulsey v. State, Tex.Cr.App., 447 S.W.2d 165.

It is also clear that while a state is not constitutionally required to provide for probation and revocation proceedings as a part of its criminal process anymore than it is required to provide for appellate review, when it does, then due process and equal protection of the law is applicable hereto. See Crawford v. State, Tex.Cr.App., 435 S. W.2d 148, and this writer's dissent in Casarez v. State, supra, which cites authorities.

And certainly it is now well established that revocation of probation hearings are a part of the criminal law process "where substantial rights of a criminal accused may be affected," and to which federal constitutional standards are applicable. Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L. Ed.2d 336; McConnell v. Rhay and Stiltner v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed. 2d 2; Crawford v. State, supra; Eiland v. State, Tex.Cr.App., 437 S.W.2d 551.

In the instant case the State in the first count of its motion to revoke alleged that

the appellant had violated his conditions of probation not to commit a penal offense by committing the offense of theft of corporeal personal property over the value of $50.00, a felony. See Articles 1410 and 1421, V.A.P.C. In the second count the State alleged, apparently to prevent a variance, the offense of driving without the owner's consent a motor vehicle over the value of $200.00, a felony. See Article 1341, V.A.P.C.

It was upon these allegations the appellant was called to defend.

The record reflects that when the State rested its case at the revocation hearing the appellant moved that the court deny the motion to revoke since the State had failed to establish value as alleged under either paragraph of the motion to revoke, had failed to call Johnny Baird, the alleged owner, or show lack of consent, had failed to show that appellant was the individual placed on probation, and had relied solely upon the testimony of an accomplice witness.

Thereafter the State was permitted to re-open its case and offered proof that the appellant was the same individual previously placed on probation.

At the conclusion of the hearing the court announced:

"The court is of the opinion and so finds that the testimony is sufficient to show that the defendant has violated his probation and that he is guilty as charged in the first paragraph—subparagraph 1 of paragraph five, except that the value is not shown to exceed $50.00, and further that he's guilty as charged in the second subparagraph of paragraph five, except that the testimony does not show the value to be over the value of $50.-00." [1]

Despite such statement by the court, the formal order revoking probation "found that the defendant failed to comply with the conditions of his probation, as set forth in said motion" to revoke.

It appears the State alleged two offenses growing out of the same transaction to prevent a variance, but the court found the appellant guilty of both.

Article 1411, V.A.P.C., provides:

"The property must be such as has some specific value capable of being ascertained. It embraces every species of personal property capable of being taken."

And it has been held that proof of value is essential to sustain a conviction for theft under this article. McCollum v. State, 93 Tex.Cr.R. 235, 247 S.W. 283. See also Moore v. State, 17 Tex.App. 176.

In Franco v. State, Tex.Cr.App., 312 S.W.2d 638, 639, this court said:

"It is axiomatic that in theft cases there must be some proof of the value of the stolen property. Keenan v. State, 120 Tex.Cr.R. 616, 48 S.W.2d 264, and Givens v. State, 143 Tex.Cr.R. 277, 158 S.W.2d 535."

As pointed out in Johnson v. State, 57 Tex.Cr.R. 308, 122 S.W. 877, whenever the punishment is affixed by law to the theft of a particular kind of property, it is unnecessary to either allege or prove the value thereof, the offense being made per se a felony; but with respect to all other classes of property, value must be alleged and proved as the value determines the grade of the offense and the punishment. See Malazzo v. State, 165 Tex.Cr.R. 441, 308 S.W.2d 29.

The Legislature has not seen fit to make the theft of a motorcycle a felony without regard to its value, and a prosecution for the theft of a motorcycle must therefore be brought under the general theft statutes.

Under the general theft statutes, the grade of the offense and the punishment applicable depend upon the value of the

---

1. The court probably meant $200.00 instead of $50.00. See Article 1341, V.A.P.C.

property stolen and the same must be alleged and proved. See Price v. State, 165 Tex.Cr.R. 326, 308 S.W.2d 47.

The same would be true of a prosecution brought under the provisions of Article 1341, V.A.P.C. (driving vehicle without owner's consent). See Garza v. State, 171 Tex.Cr.R. 420, 351 S.W.2d 248.

The record before us clearly reflects that there is no evidence, direct or circumstantial, to support the allegations of the motion to revoke as to the value of the motorcycle allegedly stolen. This fact is supported by the trial judge's own statement, and the majority agrees. Thus it is agreed that all agree that the State failed to sustain its burden of proof.

Nevertheless, the majority, despite "poor pleading" or "poor proving," concludes an offense has been shown and that the motorcycle "had some value." For support of its position the majority cites Morris v. State, Tex.Cr.App., 368 S.W.2d 615, which clearly states that this court will not take judicial knowledge of the value of a motor vehicle; Branch v. State, Tex.Cr.App., 465 S.W.2d 160, which involved an offense unlike those here alleged and which does not require allegation and proof of value (Article 1350, V.A.P.C.); and Hulsey v. State, Tex.Cr.App., 447 S.W.2d 165, for the proposition simply that revocation proceedings are not criminal trials in the constitutional sense, as if that will suffice as a cover-all for any defects in such proceedings.

I cannot agree.

Still further, Johnny Baird, the alleged owner of the motorcycle, was not called as a witness, nor was his absence accounted for. Thus a serious question is raised as to whether the evidence is sufficient to show a lack of consent on the part of the alleged owner.

In 55 Tex.Jur.2d, Theft, Sec. 185, p. 445, it is written:

"Where positive and direct proof is available, want of consent cannot ordinarily be shown by circumstantial evidence. The best evidence of want of consent is the testimony of the owner, and circumstantial evidence is inadmissible to show want of consent unless it appears that the owner is inaccessible by the use of ordinary diligence or is beyond the reach of legal process. Thus where the owner is present and has failed to give direct and positive testimony as to his want of consent to the taking, such want of consent will not be inferred from other circumstances in the evidence. But want of consent may be proved by circumstantial evidence when the owner is dead or is incompetent to testify, or where without fault on the part of the state direct testimony cannot be produced, or where it is alleged that the owner is unknown, or where no objection is made when the evidence is offered."

The majority candidly acknowledges that the evidence would not be sufficient in a theft case, but acknowledges the circumstances developed (without recitation) "at this hearing" were sufficient to show ownership and lack of consent. In support thereof the majority cites Casarez v. State, supra, which was recently and erroneously decided.

Dorsey v. State, 172 Tex.Cr.R. 311, 356 S.W.2d 943; Smith v. State, 123 Tex.Cr.R. 47, 57 S.W.2d 132, and Lynch v. State, 70 Tex.Cr.R. 449, 156 S.W. 1182 are also cited. These cases do not support the proposition advanced by the majority. In Dorsey and Lynch the alleged owner was shown to be ill and unable to testify for the State. In Smith the alleged owner was dead. It was only after such showing that the court permitted circumstantial evidence as to lack of consent.

By the decision today, the majority has, despite its disclaimer, put the stamp of approval on "poor pleadings" or "poor proving" in revocation proceedings. I predict

that we shall now see more of the same in the future.

Believing that the State has not sustained its proper burden and that the trial court abused its discretion in revoking probation, I vigorously dissent.