## Julius Schwartz v. The State.

### No. 4089.    Decided December 12, 1908.

1.—Burglary—Principals—Charge of Court.

Where upon trial for burglary the evidence showed that there were two separate entries of the house in question during the first of which the defendant was present and entered the house with intent to steal but did not secure the property, and that at the second entry of the house during which the property was taken defendant was not present. Held, that the defendant could be guilty of burglary under the facts constituting the first entry but would not be guilty under the facts of the second entry.

2.—Same—Charge of Court—Accomplice—Corroboration.

Upon trial for burglary where the State made out its case by two accomplices the court should submit a charge that one accomplice could not corroborate another.

3.—Same—Impeaching Testimony—Charge of Court.

Upon trial for burglary where the defense introduced testimony to show that a State's witness made different statements than that given in his testimony upon trial it was reversible error to charge the jury that said impeaching testimony should absolutely disprove and falsify the testimony of said State's witness. Following Benson v. State, 11 S. W. Rep. 402; Schwartz v. State, 53 Texas Crim. Rep., 449, 111 S. W. Rep., 399.

Appeal from the District Court of Bexar. Tried below before the Hon. Edward Dwyer.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*G. O. Brown* and *C. M. Chambers,* for appellant.—On question that one accomplice can not corroborate another: McConnell v. State, 18 S. W. Rep., 645; Whitlow v. State, 18 S. W. Rep., 865; Stevens v. State, 49 S. W. Rep., 105. On question of charge of court on impeaching testimony: McKinley v. State, 52 Texas Crim. Rep., 182; 106 S. W. Rep., 343.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—This conviction was for burglary, the punishment assessed being two years confinement in the penitentiary.

The State made out its case by two accomplices, Seibert and Williams. The evidence shows that a safe was taken out of the rear end of a saloon at night. The accomplices testified, in substance, that appellant and one of them went into the room where the safe was for the purpose of taking it out, but came back without it. That appellant went home and had no further connection with the burglary. That subsequently, during the same night, two of the confederates secured the safe and took it out in the neighborhood of appellant's residence, where it was entered and forty-one dollars in money secured. The accomplices testify that it was taken away in a buggy or delivery wagon owned by appellant; that appellant drove the wagon to the place of the burglary, and when he came out of the house and went away; his buggy was left, and the others used it subsequently in their undertaking. There is some evidence independent of the accomplices showing that a vehicle was driven from the point indicated by the accomplices. It may be stated that a burglary was accomplished and a safe taken from the saloon. The accomplices further testify that on the morning after the burglary at night, they took the safe from the point where it was broken into and carried it some distance to the Salado and threw it in a hole of water generally known as the "Blue Hole." That on this trip they used appellant's vehicle, and that he accompanied them. There is evidence by the witness Naurath that he had control of the pasture which was entered by appellant and the accomplice Williams riding in the vehicle, and he had some conversation with them and finally permitted them to enter his pasture. He did not see a safe in the wagon. There is quite a lot of evidence going to show that a burglary was committed, and perhaps sufficient to corroborate the accomplice's testimony to the effect that the safe was carried within

three or four hundred yards of appellant's residence and there broken. If appellant was guilty as a principal in the burglary, it was at the time he entered the house. Nothing was taken from the house at this entry, and the State shows by the accomplices that appellant was not present at the second entry and did not participate in it. We are of opinion that if appellant is a principal in the transaction, it was by reason of the first entry, and that in regard to the second, he could not be held as a principal.

In regard to the first burglary, we are of opinion that if appellant was one of those who entered, although he did not secure the safe or bring out the goods or property from the house, he would be guilty of burglary, because the constituent elements under the facts were made by the breaking, entry and intent to steal. To constitute the offense of burglary, it is not necessary that a theft be in fact committed. If there be a breaking and entry for the purpose of committing the theft, the offense of burglary is complete. The abandonment after the breaking and entry would not relieve of the offense, where the party had broken and entered with fraudulent intent to take property from the house. Appellant was not present at the second entry, but had gone home some three or four miles away, therefore, could not be a principal to the second breaking.

The court's charge is criticised in some respects. A charge was given in reference to accomplice testimony. The court failed to instruct, among other things, that one accomplice could not corroborate another. This is called to the court's attention in motion for a new trial, and partially so in a requested instruction. Upon another trial the jury should be informed that one accomplice can not corroborate another.

The court also charged the jury as follows: "The defense has introduced evidence to show that the State witness, Harvey . L. Williams, has made different statement than that given in his evidence now before you.

"Such evidence is introduced to have you disbelieve and not accept as true, and to refuse to give credence to the testimony of said Harvey Williams.

"It goes to both the discredit of the impeached witness, and the falsity of the testimony impeached, and it is for you to say, whether such impeached evidence, does or does not absolutely disprove and falsify the evidence of aforesaid witness, Harvey L. Williams." Impeached testimony is introduced usually for the purpose of attacking the credibility of the witness impeached, or who has made contradictory statements, as well as to enable the jury to weigh the testimony, they being the exclusive judges of the facts proven and the credibility of the witnesses. And it is not necessary, nor is it the law, that the impeached evidence should "absolutely" disprove and falsify the evidence of the witness. The law has not made such a rule. This question came up in the companion case of Schwartz v. State, de-

cided at the recent Austin term. The identical charge here complained of was held error by this court. See Schwartz v. State, 53 Texas Crim. Rep., 449; 111 S. W. Rep., 399. Judge Ramsey, in that case, used the following language: "Under this charge the jury could have well understood that from the impeaching statements they might have serious doubt as to the correctness and truthfulness as to the testimony given on the witness stand, but that if such statements outside of court were not of that conclusive character as to absolutely disprove the testimony given on the stand they should be disregarded. We think that this portion of the court's charge was erroneous, and probably injurious to the rights of appellant." Benson v. State, 111 S. W., 403-404. Then, as the case is presented, we are of opinion that the accomplices are not corroborated in such manner as to tend to connect appellant with the burglary. The charge in regard to the matters above set out shows error. The evidence should be strengthened upon another trial.

Without discussing the other question, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*